**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CLINT MUECK,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.: 5:20-cv-00801** |
| | § | |
| **LAGRANGE ACQUISITIONS, L.P.,** | § | |
| | § | |
| *Defendant* | § | |

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Dated October 12, 2021

Of Counsel:

Luke C. MacDowall
State Bar No. 24104445
Federal I.D. No. 2983511
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
lmacdowall@littler.com

Respectfully submitted,

*/s/ Kelley Edwards*
Kelley Edwards (Attorney-in-Charge)
State Bar No. 24041775
Federal I.D. No. 560755
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
kedwards@littler.com

**ATTORNEYS FOR DEFENDANT**
**LA GRANGE ACQUISITION, L.P.**

# TABLE OF CONTENTS

I.    Statement of Grounds and Undisputed Facts ................................................ 1

II.   Arguments and Authorities ......................................................................... 9

      A.    Mueck's Claim that La Grange Terminated His Employment
            Because of an Alleged Disability Fails as a Matter of Law ................... 9

            1.    Mueck was not disabled. ........................................................ 9

            2.    Mueck was not replaced by, or treated less favorably than, non-
                  disabled employees. ............................................................ 10

            3.    Mueck's employment terminated because he was court-ordered to
                  attend substance abuse classes that prevented him from working
                  scheduled shifts in the summer of 2019 – not as a pretext for
                  disability discrimination ...................................................... 11

      B.    Mueck's Reasonable Accommodation Claim Fails as a Matter of
            Law. ............................................................................................ 14

            1.    La Grange never rejected any request by Mueck for a disability
                  accommodation. .................................................................. 15

            2.    La Grange had no obligation to accommodate Mueck by excusing
                  his absences to attend court-ordered substance abuse classes. ........ 16

            3.    Even assuming *arguendo* that La Grange had a legal obligation to
                  accommodate Mueck's alcoholism, the Company fulfilled its
                  obligation by working with Mueck to find someone willing to
                  voluntarily swap shifts with him while not requiring anyone to do
                  so involuntarily. ................................................................. 17

      C.    Mueck's Retaliation Claim Fails as a Matter of Law. ......................... 18

            1.    Mueck cannot state a *prima facie* retaliation claim. ................... 18

            2.    La Grange's reason for terminating Mueck's employment was not
                  pretext for retaliation ........................................................... 19

III.  Conclusion .......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ames v. Home Depot U.S.A., Inc.*,
  629 F.3d 665 (7th Cir. 2011) ................................................. 10

*Bell v. Dallas Cnty.*,
  432 F. App'x 330 (5th Cir. 2011) .......................................... 11

*Brown v. Lucky Stores, Inc.*,
  246 F.3d 1182 (9th Cir. 2001) .............................................. 15

*Burch v. Coca-Cola Co.*,
  119 F.3d 305 (5th Cir. 1997) ...............................10, 14, 16, 17

*Caldwell v. KHOU-TV*,
  850 F.3d 237 (5th Cir. 2017) ................................................ 11

*Claiborne v. Recovery Sch. Dist.*,
  690 F. App'x 249 (5th Cir. 2017) .......................................... 17

*Clark v. Champion Nat. Security, Inc.*,
  952 F.3d 570 (5th Cir. 2020) ............................................12, 18

*EEOC v. Chevron Phillips Chem. Co.*,
  570 F.3d 606 (5th Cir. 2009) ................................................. 9

*Eversley v. M Bank Dallas*,
  843 F.2d 172 (5th Cir.1988) ................................................. 17

*Garcia v. Levi Strauss & Co.*,
  85 S.W.3d 362 (Tex. App.—El Paso 2002) ............................. 9

*Green v. Medco Health Sols. of Tex., LLC*,
  947 F. Supp. 2d 712 (N.D. Tex. 2013) ................................... 12

*Hartley v. UPS, Inc.*,
  2006 WL 306092 (W.D. Ky. Feb. 8, 2006) ............................ 15

*Jiles v. Wright Med. Tech., Inc.*,
  313 F. Supp. 3d 822 (S.D. Tex. 2018) ................................... 17

*Kitchen v. BASF*,
  952 F.3d 247 (5th Cir. 2020) ................................................ 16

*Kittleson v. Sears, Roebuck and Co.*,
  2010 WL 2485935 (D. Hi. Jun. 15, 2010) .............................. 10

iii

*Leary v. Dalton,*
    58 F.3d 748 (1st Cir. 1995) .................................................................16

*Lee v. Kansas City S. Ry. Co.,*
    574 F.3d 253 (5th Cir. 2009) ...............................................................11

*Lottinger v. Shell Oil Co.,*
    143 F. Supp. 2d 743 (S.D. Tex. 2001) .................................................10

*Maull v. Div. of St. Police,*
    141 F. Supp. 2d 463 (D. Del. May 3, 2001) .......................................12

*McKey v. Occidental Chem. Corp.,*
    956 F. Supp. 1313 (S.D. Tex. 1997) ....................................................10

*Nall v. BNSF Ry. Co.,*
    917 F.3d 335 (5th Cir. 2019) ...............................................................18

*Neely v. PSEG Texas, Ltd. P'ship,*
    735 F.3d 242 (5th Cir. 2013) ...............................................................14

*NME Hospitals, Inc. v. Rennels,*
    994 S.W.2d 142 (Tex. 1999) ..................................................................9

*Outley v. Luke & Assocs., Inc.,*
    840 F.3d 212 (5th Cir. 2016) .................................................................9

*Rosenfeld v. Canon Business Solutions, Inc.,*
    2011 WL 4527959 (D.N.J. Sept. 26, 2011) .........................................17

*Smith v. City of Austin,*
    2014 WL 4966292 (Tex. App.—Austin Sept. 30, 2014) ......................16

*Tabatchnik v. Continental Airlines,*
    262 F. App'x 674 (5th Cir. 2008) ...................................................18, 19

*Taylor v. Phoenixville Sch. Dist.,*
    184 F.3d 296 (3d Cir. 1999) .................................................................14

*Taylor v. Principal Financial Grp., Inc.,*
    93 F.3d 155 (5th Cir. 1996) ............................................................14, 15

*Wilkerson v. Boomerang Tube, LLC,*
    2014 WL 5282242 (E.D. Tex. Oct. 15, 2014) .....................................17

**Statutes**

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* .....................1, 9, 10, 12, 14

TEX. LAB. CODE § 21.001 *et seq.* ...................................................................................................1

42 U.S.C. § 12102(1) .................................................................................................................9

TEX. LAB CODE § 21.002(6)....................................................................................................10

42 U.S.C. § 12114(c)(4)......................................................................................................12, 13

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant La Grange Acquisition, L.P. ("La Grange") files this Motion for Summary Judgment under Federal Rule of Civil Procedure 56.[1]

# I.
## STATEMENT OF GROUNDS AND UNDISPUTED FACTS

**A.      The Causes of Action Challenged**

Plaintiff, Clint Mueck, filed his Complaint on July 10, 2020, alleging that his former employer, La Grange, terminated his employment to discriminate against him because of his alleged disability and to retaliate against him because he had requested an accommodation for that disability.  *See* Doc. No. 1.  Mueck also alleges that La Grange failed to reasonably accommodate his disability.  *See id.*[2]  Discovery closed on July 5, 2020. *See* Doc. No. 15.  La Grange now moves for complete summary judgment because each of Mueck's claims fail as a matter of law.

**B.      Specific Grounds for the Motion**

La Grange is entitled to summary judgment on Mueck's disability discrimination claim because he cannot establish his *prima facie* case when he is not "disabled" within the meaning of applicable law, and regardless when he was not replaced by, or treated less favorably than, a non-disabled employee.  La Grange is also entitled to summary judgment on Mueck's disability discrimination claim because his employment terminated when he was court-ordered to attend classes, which conflicted with his work schedule, after violating his criminal probation – not because the Company discriminated against him for a disability.

---

[1] In his Original Complaint, Plaintiff incorrectly names as a Defendant "LaGrange Acquisitions, L.P."  The correct spelling of Defendant's name is La Grange Acquisition, L.P.

[2] Mueck asserts all three of his claims under both the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Chapter 21 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq. See* Doc. No. 1.

La Grange is entitled to summary judgment on Mueck's failure-to-accommodate claim because he did not request any disability accommodation, the Company was under no obligation to excuse his absences to attend court-ordered substance abuse classes as a disability accommodation, and the Company fulfilled any duty it may have had by trying to resolve his scheduling conflicts.

Finally, La Grange is entitled to summary judgment on Mueck's retaliation claim because he did not engage in any legally protected activity, cannot show any causal nexus between any protected activity and his termination, and there is no evidence that the legitimate, non-retaliatory reason for his termination was pretext for retaliation.

## C.   Summary of Undisputed Facts

1.   La Grange operates a natural gas processing plant located near Karnes City called the Fashing gas plant. (Pawelek Decl. ¶ 2). La Grange's predecessor hired Mueck to work as an Operator at this plant on or about February 6, 2015. (Mueck Dep. 6:1-3, 44:18-20; Ex. A-2 [La Grange 000003-5]).[3] Mueck's job duties entailed performing rounds throughout the day to check pipeline equipment, pumps, compressor stations, temperatures, and other variables, and keeping an hourly log of pressures, readings, flows, and temperatures. (Mueck Dep. 46:22-47:13; Ex. A-3 [La Grange 000045-47]).

2.   Mueck and the other operators worked seven days on-shift followed by seven days off-shift, Wednesday through Tuesday, rotating between a 12-hour dayshift (6:00 a.m. to 6:00 p.m.) and a 12-hour nightshift (6:00 p.m. to 6:00 a.m.). (Mueck Dep. 97:22-98:20; Pawelek Decl. ¶ 4). For example, an operator who works dayshift during week 1 will be off during week 2, on

---

[3] Operators are classified as Class A, B, or C where Class A Operators are the most experienced. (Mueck Dep. 44:21-45:7; Ex. A-2 [La Grange 000003-5]. Mueck was originally hired as a Class B Operator but was later promoted to Class A. (Mueck Dep. 44:21-45:7).

nightshift during week 3, off again during week 4, and then restart the rotation on dayshift during week 5. (Pawelek Decl. ¶ 4).

3.      Operators reported directly to the Plant Supervisor, Kevin Pawelek, and indirectly to the Manager – Operations, Jerry Frausto. (Pawelek Decl. ¶ 3; Pawelek Dep. 4:17-18; Mueck Dep. 49:4-6).  Frausto reported to the Director – Operations, Ricky Bonewald, who reported to the Vice President – Operations, Chad Ingalls. (Pawelek Decl. ¶ 3).  The facility was supported by a Senior Manager – Human Resources, Raymond de la Vega, among other staff. (Vega Decl. ¶ 2).

4.      As further detailed below, Mueck's employment terminated on June 4, 2019, after his criminal probation for Driving While Intoxicated ("DWI") was revoked following two Public Intoxication charges that he received in 2018 and a third DWI citation in March 2019. (Ex. A-22 at 7).

5.      Mueck's criminal history is significant for numerous alcohol-related crimes. In 1997, Mueck received his first citation for Driving Under the Influence ("DUI") in Victoria County. (Mueck Dep. 77:11-18; Ex. A-22 at 7). He was placed on probation as part of a pretrial diversion program and required to do community service, pay certain fees, and agree to various stipulations that he not consume alcohol or visit locations associated with alcohol, such as bars. (Mueck Dep. 77:14-78:12; Ex. A-22 at 7).  Mueck was working at the Fashing Gas Plant in July 2017 when he received a second citation for DWI in Wilson County, and again he was placed on probation as part of a pretrial diversion program. (Mueck Dep. 78:23-79:6; Ex. A-12 [La Grange 000332-333]; Ex. A-22 at 7).  Despite informing the Company about the July 2017 DWI, Mueck continued to work at the Fashing Gas Plant for almost two years. (Mueck Dep. 86:25-87:6).

6.      In the interim, Mueck's actions resulted in additional charges for still other alcohol-related crimes, the conditions of which ultimately led to his termination in mid-2019.  Specifically,

Mueck violated the terms of his probation when he was charged with Public Intoxication in March 2018 in Comal County and again in June 2018 in Guadalupe County, and he was also cited for his third DWI in March 2019. (Mueck Dep. 79:3-83:21; Ex. A-22 p. 7). Wilson County revoked Mueck's probation for the July 2017 DWI following these other criminal charges and mandated that he comply with various sanctions as part of his extended probation. (Mueck Dep. 84:7-25; 85:12-86:23; Ex. A-22 at 7).

7.      La Grange prohibits discrimination against employees on the basis of disability, among other protected characteristics, as part of its robust Equal Employment Opportunity policy. (Ex. A-8 [La Grange 000354-439] at 000363). The Company has also promulgated an extensive accommodation policy, which provides that employees who suffer disabilities may request reasonable accommodations to enable them to perform the essential functions of their position. (Ex. A-8 at 000369-370).  Mueck was aware of these policies throughout his employment. (Mueck Dep. 51:20-52:22, 57:2-59:1, 62:18-24).

8.      Indeed, Mueck benefited from the Company's accommodation policy.  In May 2018, Mueck suffered a work-related knee injury while offloading nitrogen cylinders from the back of a truck. (Mueck Dep. 63:3-25).  Mueck's medical providers diagnosed a torn ACL, and Mueck underwent reconstructive surgery in July 2018. (Mueck Dep. 64:17-21, 65:14-23).  He remained out of work collecting workers' compensation benefits from July 2018 until February 2019. (Mueck Dep. 65:10-23).  During this period, Mueck exhausted his job protected medical leave and his vacation time, but La Grange did not terminate his employment. (Mueck Dep. 65:10-23; Vega Decl. ¶ 3). Instead, the Company provided him with additional medical leave as an accommodation, allowing him time to recover from his disabling medical condition before returning to work on February 18, 2019. (*Id.*).

4

9.     La Grange terminated Mueck's employment only after he was court-ordered to attend substance abuse classes that conflicted with his work schedule following the revocation of his criminal probation.  Shortly after returning to work from his knee injury, Mueck was arrested in Guadalupe County on March 3, 2019, for his third DWI. (Mueck Dep. 79:15-19; Ex. A-15 [La Grange 000328]).[4] Mueck informed Frausto about his arrest as required by the Company's Vehicle Safety Policy. (Mueck Dep. 59:20-61:12; Ex. A-9 [La Grange 000591-595]).  Frausto, De la Vega, Bonewald, and Pawelek discussed the situation on March 6, and Frausto advised the group that Mueck was already on probation from the July 2017 DWI, that Mueck had reached out to the Employee Assistance Program ("EAP") hotline for assistance,[5] and that Mueck may have to comply with certain court-ordered mandates that could interfere with his work, if the government revoked his probation. (Vega Decl. ¶ 4; Pawelek Decl. ¶ 5; Ex. G [La Grange 000584-590]).  In the interim, Mueck continued to work throughout March, April, and into May. (Pawelek Decl. ¶ 6).

10.     On May 17, Mueck notified Pawelek that his probation had indeed been revoked. (Pawelek Decl. ¶ 6; Ex. 16 [La Grange 000325-328]; Ex. H [La Grange 000614-616]).  Mueck told Pawelek that the Court had ordered him to comply with several conditions as part of an extended probation, including:  (1) that he would have to carry a personal breathalyzer with him to work; (2) that he would have to install a breathalyzer in his truck; and (3) that he was required to attend substance abuse classes. (Ex. H [La Grange 000614-616]; Pawelek Decl. ¶ 6).  Pawelek asked Mueck to provide additional details about these conditions so that management could assess

---

[4] Mueck pled guilty to the offense on October 8, 2019. (Ex. A-14).

[5] EAP is a program that is designed to provide employees with assistance to a variety of personal problems by making available to them a confidential hotline. (Vega Decl. ¶ 4). Mueck was originally provided information about EAP and the hotline when he was provided his original employment offer in February 2015. (Ex. A-2 [La Grange 000003-5). EAP contact information is also contained in the Employee Handbook. (Ex 4 [La Grange 000017]; Ex. A-8 at 000387-000388, 000422-000423).

how they might impact the business and Mueck's employment. (Pawelek Decl. ¶ 6). Mueck clarified that he would have to blow into his personal breathalyzer three times a day, once during each of the following timeframes: 6:00 a.m. to 8:00 a.m., 5:00 p.m. to 7:00 p.m., and 9:00 p.m. to 12:00 p.m. (Pawelek Decl. ¶ 6; Ex. I [La Grange 000621-624]). Mueck also clarified that he would have to attend substance abuse classes every Monday night from 6:00 p.m. to 8:00 p.m. for three months. (*Id.*).

11.     Management determined that these issues would prevent him from carrying out his job duties. (Bonewald Dep. 8:6-17, 11:11-25). Mueck himself acknowledges that these various sanctions would have infringed on his work in several ways. For example, the substance abuse classes every Monday night conflicted with Mueck's rotating work schedule. (Mueck 93:7-9, 94:12-95:11, 99:8-13). Additionally, Mueck would need to blow into the breathalyzer during work hours. (Mueck Dep. 89:4-14, 91:16:-92:24; Ex. A-17 [La Grange 000091-95]). Management was particularly concerned about this fact because the device includes a camera that would capture his image whiling blowing into the device, and employees are prohibited from taking pictures inside the facility. (Mueck Dep. 89:19-90:2, 92:25-93:3; Pawelek Decl. ¶ 6). Additionally, a probation officer could make field visits whenever requested to monitor Mueck's use of the device, which visits could occur during work hours. (Mueck Dep. 92:15-24; Ex. A-17 [La Grange 000091-95]; Bonewald Dep. 6:9-18).

12.     Based on this new information, Pawelek informed Frausto, De la Vega, and Bonewald about the conflict between the court-ordered classes and Mueck's schedule. (Pawelek Decl. ¶ 7; Ex. I [La Grange 000621-624]; Ex. H [La Grange 000614-616]). Pawelek collaborated with Mueck to see if they could find a solution to the scheduling issue. When Mueck told Pawelek that a co-worker named Les Lassiter was willing to swap shifts with him to cover certain of his

absences, Pawelek spoke with Lassiter who confirmed that he was willing to present for work one

hour earlier than normally scheduled (*i.e.* by presenting at 5:00 p.m. instead of the usual start time

of 6:00 p.m.), so Mueck could leave work early. (Pawelek Decl. ¶ 7; Pawelek Dep. 13:15-14:13,

22:2-23:25).  This would have resolved the conflicts when Mueck was scheduled to work dayshift,

but it did not resolve the conflicts when Mueck was scheduled to work nightshift. (Pawelek Decl.

¶ 7; Pawelek Dep. 13:15-14:13, 22:2-23:25).

13.     Accordingly, Pawelek sent an email on May 24, asking if any of the other operators

would be willing to swap to cover the remaining shifts. (Pawelek Dep. 14:8-11; Pawelek Decl. ¶

7).  Specifically, Pawelek asked:

> Would anyone be willing to trade nights with Clint. He is needing off June 3, July
> 1, July 29, 30, and Aug 26. He is willing to trade shift for any day of the week. If
> anyone has any questions on this let me know.

> (Ex. A-18 [La Grange 000619]).

But no one responded to the email. (Pawelek Decl. ¶ 7; Pawelek Dep. 14:12-13; Ex. A-18 [La

Grange 000619]).

14.     While the business was willing to allow Mueck to find someone to volunteer to

swap shifts to resolve the scheduling conflicts, it was not willing to force other employees to swap

shifts in order to resolve these conflicts. (Pawelek Decl. ¶ 8; Bonewald Dep. 30:11-22).  Shift

swaps are not common at the facility because they can also create problems for the business.

(Pawelek Decl. ¶ 8:). For example, shift swaps can result in employees working more than 40

hours per week, and these extended hours for employees who already work 12-hour shifts can

create safety concerns because longer working hours can lead an operator to err in making sure

that the gas processing operations are running smoothly and safely. (Pawelek Decl. ¶ 8).

Additionally, operators working more than 40 hours in a workweek would result in overtime

payments that they otherwise would not have worked but-for shift swaps, which costs the business.

(Pawelek Decl. ¶ 8).  Consequently, shift swaps are typically done only on a permanent basis – as opposed to a temporary basis – in order to allow the business to schedule employees such that they do not work unnecessarily long hours. (Pawelek Decl. ¶ 8).[6]

15.     On May 28, Pawelek notified De la Vega, Bonewald, and Frausto about the predicament, explaining that no one had volunteered to cover Mueck's nightshifts. (Ex. I [La Grange 000621-624]; Pawelek Decl. ¶ 9; Bonewald Dep. 55:3-14).  Mueck was suspended from work pending a review of the situation. (Vega Dep. 53:1-2, 53:5-14).

16.     Following this review, Bonewald recommended to Ingalls that Mueck's employment be terminated, and after consulting with human resources, Ingalls made the decision to terminate Mueck's employment because the court-ordered substance abuse classes conflicted with his work schedule. (Bonewald Dep. 5:19-25, 28:22-29:21).  Frausto and De la Vega called Mueck to inform him of this decision on June 4. (Mueck Dep. 110:7-12, 111:8-13; Vega Decl. ¶ 5).

17.     Mueck now alleges that he was terminated because he is an alcoholic, and that his alcoholism constitutes a disability. (Mueck Dep. 68:2-5). While he claims to have been an alcoholic since 2005, Mueck alleges only to have informed Pawelek and Frausto about this when discussing his third DWI charge in early March 2019. (Mueck Dep. 72:9-73:10).

18.     La Grange vehemently denies that Mueck's alleged alcoholism had anything to do with the termination decision. (Vega Decl. ¶ 6; Pawelek Decl. ¶ 10).  Bonewald, Pawelek, and Vega deny that Mueck ever informed them that he was an alcoholic, and he never informed them that his condition was disabling in any way. (Bonewald Dep. 18:4-7, 22:8-18; Pawalek Decl. ¶ 10;

---

[6] Mueck admits that swapping shifts could cause managers logistical issues. (Mueck Dep. 101:1-18).

Vega Dep. 7:10-14, 26:15-20; Vega Decl. ¶ 6).  Mueck admits that neither ever made any negative comments about his alleged condition. (Mueck Dep. 73:11-13, 74:20-22).

19.     As noted above, Mueck's employment did not terminate in early March 2019 when he allegedly informed his managers about his condition, nor did it terminate in the two months thereafter.  Mueck's employment did not terminate until after he informed the Company of several court-ordered mandates that he had to comply with as a result of the revocation of his probation, including conflicts with his work schedule that he was unable to resolve.

## II.
## ARGUMENTS AND AUTHORITIES

### A.     Mueck's Claim that La Grange Terminated His Employment Because of an Alleged Disability Fails as a Matter of Law.

Mueck must establish four elements to state a *prima facie* case of disability discrimination: (1) he was disabled; (2) he was qualified for the job; (3) he suffered an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *EEOC v. Chevron Phillips Chemical Co.*, 570 F.3d 606, 615 (5th Cir. 2009).[7] If he made a case, the burden would shift to La Grange to offer a legitimate, non-discriminatory reason for Mueck's termination. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). Finally, the burden would shift back to Mueck to prove that this reason is merely a pretext for disability discrimination. *Id.*

### 1.     Mueck was not disabled.

An individual is disabled only if:  (1) he suffers a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such impairment; or

---

[7] Mueck's Chapter 21 discrimination claims are analyzed under the same burden-shifting framework as the ADA. *Garcia v. Levi Strauss & Co.*, 85 S.W.3d 362, 368 (Tex. App.—El Paso 2002, no pet.); *NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999) (Texas state courts "look to analogous federal precedent for guidance when interpreting [Chapter 21]").

(3) he is "regarded as" having such an impairment by the employer. *See* 42 U.S.C. § 12102(1). The law is clear that an individual is not disabled merely because he is an alcoholic or even because his alcoholism prevents him from performing activities of daily living while inebriated or hungover by binge drinking. *Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir. 1997).[8]

Here, Mueck testified that his alcoholism caused him to crave alcohol, leading him to binge drink, but the condition never prevented him from working or doing his job. (Mueck Dep. 48:8-10, 68:10-20, 71:16-21). Just like the plaintiff in *Burch*, Mueck's alleged alcoholism does not constitute a disability because the mere fact that it caused him to crave alcohol and binge drink does not render him disabled, even if he may have been unable to perform activities of daily living while inebriated. La Grange is therefore entitled to summary judgment on this basis alone.[9]

### 2.   Mueck was not replaced by, or treated less favorably than, non-disabled employees.

Mueck cannot satisfy the fourth element of his *prima facie* case because he was not replaced by, or treated less favorably than, non-disabled employees. While La Grange eventually hired a replacement for Mueck, there is no evidence one way or the other whether this person has any disability. (Pawelek Dep. 21:10-18). Indeed, Pawelek and Bonewald both testified that they have no knowledge of this employee's disability status – meaning that his hire to replace Mueck

---

[8] *See also Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665 (7th Cir. 2011) (affirming summary judgment for the employer because the plaintiff could not show that her alcoholism substantially limited major life activities, and thus was not an ADA-qualifying disability); *McKey v. Occidental Chem. Corp.*, 956 F. Supp. 1313 (S.D. Tex. 1997) (holding that the plaintiff was not "disabled" under the ADA merely because he claimed to have been impaired by his alcoholism because there was insufficient evidence of a substantial limitation on any major life activity); *Kittleson v. Sears, Roebuck and Co.*, CV. No. 10–00106 DAE BMK, 2010 WL 2485935 (D. Hi. Jun. 15, 2010) (holding that an assistant store manager who had started a rehab program for alcoholism was not "disabled" because he alleged no facts that his condition substantially limited any major life activities).

[9] La Grange is entitled to summary judgment on Mueck's state law claim because the Texas Labor Code excludes from the definition of "disability" an individual who has a "current condition of addiction to the use of alcohol…." TEX. LAB CODE § 21.002(6). Mueck claims to be an alcoholic to date, (Mueck Dep. 69:1-13, 71:22-72:8), so he cannot claim to be "disabled" under Texas law. *See Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 756, 761-62 (S.D. Tex. 2001) (holding that alcoholism is "not cognizable" under Chapter 21's definition of disability).

is absolutely no proof whatsoever of disability discrimination. (Pawelek Dep. 21:19-21; Bonewald Dep. 40:7-19).

Mueck also has no evidence of disparate treatment. Mueck's burden is a heavy one, requiring proof of disparate treatment under "nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Mueck admits, however, that he knows of no other employee whom the Company treated more favorably under nearly identical circumstances. Indeed, Mueck testified that that he knows of no other non-disabled employee who was treated better than he was, and that he knows of no other employees who had to miss work because of a court-ordered obligation who were not terminated. (Mueck Dep. 128:11-14). Therefore, Mueck's discrimination claim fails because he cannot establish the fourth element of his *prima facie* case.

3. <u>Mueck's employment terminated because he was court-ordered to attend substance abuse classes that prevented him from working scheduled shifts in the summer of 2019 – not as a pretext for disability discrimination.</u>

La Grange terminated Mueck's employment because his court-ordered attendance of substance abuse classes, required by the revocation of his criminal probation, prevented him from working scheduled shifts for three months in the summer of 2019. This is undoubtedly a legitimate, non-discriminatory reason for his termination. *See Bell v. Dallas Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011) (holding that absenteeism is a legitimate, non-discriminatory reason for termination). In order to maintain his lawsuit, Mueck must demonstrate that this explanation is a false pretext for disability discrimination. *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).

Mueck has no evidence that La Grange's reason for taking adverse action against him was false – even admitting that this was the reason he was given for his termination. (Mueck Dep. 111:8-13). The timeline of events further supports this rationale in that the Company did not terminate Mueck's employment after he informed his managers about his DWI arrest, or even after

11

allegedly informing them about being an alcoholic, in early March 2019.  Rather, the Company chose to terminate his employment only after he informed his managers that his probation had been revoked, and he had to comply with numerous sanctions that effected his work, including by being forced to attend substance abuse classes that conflicted with his work schedule.  Even then, it was only after unsuccessful attempts both by Mueck and by Pawelek to reconcile the scheduling conflicts that the termination decision was made.  In short, Mueck cannot show that the reason for his termination was a pretext for disability discrimination because the undisputed evidence supports, rather than contradicts, the rationale.

Without any evidence to prove pretext, La Grange anticipates that Mueck will argue his termination was unlawful because his need to attend substance abuse classes was linked to his alleged alcoholism, and therefore, the Company's reliance on this reason for termination is discriminatory.  This is wrong.  The law is clear that employers are entitled to discipline employees for misconduct even when the misconduct is attributable to an alleged disability. *See Clark v. Champion National Security, Inc.,* 952 F.3d 570, 583, n. 49 (5th Cir. 2020) (noting that "the ADA does not insulate an employee from adverse action taken by an employer because of misconduct in the workplace, even if his improper behavior is arguably attributable to an impairment") (citing *Green v. Medco Health Sols. of Tex., LLC*, 947 F. Supp. 2d 712, 719 (N.D. Tex. 2013)).  The ADA specifically provides that employers are not required to excuse misconduct when causally related to an employee's alcoholism, and instead:

> may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee.

42 U.S.C. § 12114(c)(4).

For example, employers are entitled to discipline an employee for absences even when those absences are related to the employee's alcoholism.  In *Maull v. Div. of St. Police*, a state trooper had a history of traffic infractions related to drinking and driving that resulted in the suspension of his driver's license. 141 F. Supp. 2d 463, 466-68 (D. Del. May 3, 2001).  When his license was reinstated, the defendant returned the plaintiff to fulltime work. *Id.* at 469. Approximately one month later, however, the plaintiff called-in "sick" for two days after drinking heavily, received a speeding ticket on his way to work the following day, and tested positive for alcohol when he arrived at work. *Id.*  As a result, the plaintiff entered a residential treatment program. *Id.*  While the defendant initially accommodated his work schedule to allow him to attend the program, it proceeded to review possible disciplinary action against him through its civil service board that ultimately resulted in his termination. *Id.* at 469-70.  When the plaintiff sued, alleging disability discrimination, the court granted the defendant's motion for summary judgment, holding that the employer's mere knowledge of the rehabilitation program was insufficient to prove discrimination. *Id.* at 475.

Similarly, here, La Grange requires its employees present for work on their scheduled shifts as part of its attendance policy, and the Company considered Mueck's absences to attend substance abuse classes because of the revocation of his probation to be unexcused. (Vega Decl. ¶ 6; Pawelek Decl. ¶ 9; Ex. A-8 [La Grange 000354-439]).  Indeed, other employees who have been unable to appear for work because of a court sanction have likewise been disciplined and terminated. (Vega Decl. ¶ 6).  Even if Mueck needed to attend substance abuse classes to rehabilitate from his alcohol dependency, this does not mean that La Grange was prohibited from disciplining him for his absences, nor does it mean that La Grange discriminated against him based on a disability by disciplining him for these absences. Therefore, La Grange is entitled to summary judgment

because Mueck cannot prove that the reason for his termination was pretext for disability discrimination.

**B.**     **Mueck's Reasonable Accommodation Claim Fails as a Matter of Law.**

To state a *prima facie* failure-to-accommodate claim, Mueck must show: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known to the employer; and (3) the employer failed to make reasonable accommodations. *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013). With respect to the latter two elements, it is insufficient that Mueck made a request that he subjectively believed was an accommodation for his alleged disability of alcoholism.  Rather, Mueck must have made La Grange aware of his need for a disability accommodation. *See Taylor v. Principal Financial Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) ("Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.").  In this regard, "it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability." *Id.* at 164. "[T]he ADA requires employers to reasonably accommodate limitations, not disabilities." *Id.* "This is a critical distinction, because the existence *vel non* of a disability or impairment is material to a reasonable accommodation claim only insofar as it limits an employee's ability to perform his or her job." *Burch*, 119 F.3d at 314; *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) ("[T]he employer must know of both the disability and the employee's desire for accommodations for that disability.").

1.    <u>La Grange never rejected any request by Mueck for a disability accommodation.</u>

An employer has no duty to excuse an employee's absences, even where those absences are related to the employee's alcoholism, where the employee fails to make clear to the employer that he is requesting leave as a disability accommodation.  For example, in *Brown v. Lucky Stores, Inc.*, the Ninth Circuit held that the employer did not have a duty to accommodate an employee's alleged disability of alcoholism by allowing her to miss work to attend court-ordered rehabilitation following her arrest six days earlier for drunk driving where neither the employee nor her relative who contacted the employer on her behalf requested this specific accommodation on account of any alleged disability. 246 F.3d 1182 (9th Cir. 2001).  Likewise, in *Hartley v. UPS, Inc.*, the plaintiff asserted that UPS failed to accommodate her alcoholism by denying leave to attend a rehabilitation program after she failed a blood alcohol test. No. Civ. A. 304CV543-H, 2006 WL 306092, at *4 (W.D. Ky. Feb. 8, 2006).  The district court dismissed the claim because there was no evidence that the plaintiff specifically requested an opportunity to attend a rehab program to treat a disability, so the employer was not on notice of the need to accommodate. *Id.* at **4-5.

Similarly, here, Mueck never presented a request for a disability accommodation to La Grange. (Vega Decl. ¶ 6; Vega Dep. 36:6-37:20).  Mueck only informed his managers that his probation had been revoked, and that he was being ordered to comply with a plethora of related sanctions, including having to attend substance abuse classes.  Vega explained at his deposition why this is critical in that the Company only understood that Mueck wanted to be excused from work because of court-ordered requirements; there was no understanding that Mueck was requesting that the Company consider a disability-related accommodation. (*Id.*).  Thus, just like the situations in *Brown* and *Hartley*, La Grange cannot be faulted for failing to accommodate when Mueck did not put the Company on notice that he was requesting a specific disability accommodation.

15

Moreover, it is irrelevant that Mueck now claims to have subjectively believed that he was requesting a disability accommodation for his alcoholism when speaking with the Company about his need to attend substance abuse classes. As the Fifth Circuit recognized in *Taylor*, employers are not required to assume that employees are requesting accommodation related to mental disabilities. It is rather incumbent upon the employee to make clear that he is requesting an accommodation because of a mental disability, which Mueck did not do in this case. This is fatal to Mueck's failure-to-accommodate claim, entitling La Grange to summary judgment. *See Smith v. City of Austin*, No. 03–12–00295–CV, 2014 WL 4966292, at *1 (Tex. App.—Austin Sept. 30, 2014, mem. op.) (holding that the employer did not fail to reasonably accommodate the plaintiff when the employer did not know of the plaintiff's alleged limitations caused by her mental health disorders, and therefore, her related request for assistance did not constitute a request for reasonable accommodation as a matter of law).

2.   La Grange had no obligation to accommodate Mueck by excusing his absences to attend court-ordered substance abuse classes.

Employers are not required to afford employees unpaid leave from work to attend alcoholism rehabilitation classes, particularly where the employee does not voluntarily request leave to attend rehabilitation, but instead seeks to excuse absences to attend court-ordered counseling sessions after being charged with an alcohol-related crime. *See Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020); *Burch*, 119 F.3d at 319 n. 11; *see also Leary v. Dalton*, 58 F.3d 748 (1st Cir. 1995) (holding that the plaintiff was not entitled to draw on accrued leave as a reasonable accommodation following an arrest for drunk driving where he never advised employer of his alcoholism or sought accommodation of any kind until after incarceration).

Very similar to the situations in *Brown* and *Hartley* discussed above, Mueck was involuntarily ordered to attend substance abuse counselling because of his persistent criminal acts.

16

The fact that he now blames his alcoholism as the root cause of his criminal actions does not legally obligate La Grange to excuse his absences as a form of disability accommodation.  Indeed, the Fifth Circuit has never held that employers must provide leave as an accommodation to allow an employee to seek rehabilitation for alcoholism, particularly where any rehabilitation was not sought voluntarily by the employee but rather involuntarily based on a court order. *See Kitchen* and *Burch*, supra. Therefore, even if Mueck had made clear that he was requesting an accommodation on account of his alcoholism, which he did not, the Company did not violate the law in refusing to excuse his related absences.

3.  <u>Even assuming *arguendo* that La Grange had a legal obligation to accommodate Mueck's alcoholism, the Company fulfilled its obligation by working with Mueck to find someone willing to voluntarily swap shifts with him while not requiring anyone to do so involuntarily.</u>

Despite the fact that it had no legal obligation to accommodate Mueck, La Grange attempted to help Mueck by allowing him to locate coworkers who were willing to swap shifts with him to resolve the scheduling conflicts with his substance abuse classes.  Pawelek even took the initiative to help find workers willing to swap shifts with Mueck, but no one responded to his May 28 email asking for volunteers to trade nightshifts with Mueck.[10]  Therefore, while La Grange contends that the law did not require any accommodation for the reasons above, assuming

---

[10] To be clear, the law did not require La Grange to go further by forcing other employees to cover Mueck's unexcused absences because forcing other employees to trade shifts is not a reasonable accommodation. *See Rosenfeld v. Canon Business Solutions, Inc.*, Civil No. 09–4127 (JBS/KMW), 2011 WL 4527959 (D.N.J. Sept. 26, 2011) (holding that the employer "[could not] reasonably force other employees to change their shifts in order to accommodate [the] Plaintiff"); *Eversley v. M Bank Dallas*, 843 F.2d 172 (5th Cir.1988) (holding that employers are not required to force other employees to trade shifts as a reasonable accommodation under Title VII of the Civil Rights Act of 1964); *Wilkerson v. Boomerang Tube, LLC*, No. 1:12–CV–198, 2014 WL 5282242 (E.D. Tex. Oct. 15, 2014) (holding that the plaintiff's request that a coworker or trainee assist him was not reasonable because this amounted to reassignment of job duties); *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 254-55 (5th Cir. 2017) (holding that the employer did not fail to reasonably accommodate by denying the plaintiff's request to exchange work assignments with a colleague because this constituted a reassignment of responsibilities); *Jiles v. Wright Med. Tech., Inc.*, 313 F. Supp. 3d 822, 842 (S.D. Tex. 2018) (holding that the plaintiff's request to be excused from overtime work was not reasonable because other employees would have to shoulder the work).

*arguendo* that any requirement existed, La Grange fulfilled its obligation by trying to accommodate Mueck through the use of voluntary shift swaps among the operators.

**C.    Mueck's Retaliation Claim Fails as a Matter of Law.**

Mueck's retaliation claim is analyzed under the same burden-shifting framework as his discrimination claim.  To state a *prima facie* claim, Mueck must show: (1) he participated in a protected activity; (2) La Grange took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action. *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019).  If Mueck establishes a *prima facie* case, La Grange must present a legitimate, non-retaliatory reason for the adverse employment action. *Clark v. Champion Nat'l Security Inc.,* 952 F.3d 570, 588 (5th Cir. 2020).  Mueck must then show that the proffered reason is a pretext for retaliation. *Id.*  With respect to the third element, Mueck must show that his termination would not have occurred "but for" the retaliatory motive. *Id.*

1.    Mueck cannot state a *prima facie* retaliation claim.

Mueck cannot satisfy the first element of his *prima facie* case because he never engaged in a protected activity.  An employee's request for accommodation does not constitute a protected activity when the employee fails to prove that the request is connected with a cognizable disability or that the employer "regarded" the employee as disabled. *See Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 677 (5th Cir. 2008).  In *Tabatchnik*, the plaintiff requested flex time to attend doctor's appointments during lunch breaks. *Id.* at 674-75.  After her termination, the plaintiff sued for unlawful retaliation, contending that his request constituted a protected activity because he was seeking a disability accommodation. *Id.*  The Fifth Circuit affirmed summary judgment for the employer, however, holding that his request did not constitute a request for accommodation where he had not proven that he suffered a cognizable disability or that the employer regarded him as disabled. *Id.* at 677.

18

Similarly, here, Mueck's decision to inform management about needing to attend court-ordered substance abuse classes did not constitute a request for disability accommodation because he was not actually disabled, nor did La Grange regard him as disabled, at the time. Instead, Mueck merely informed La Grange about the circumstances surrounding the revocation of his criminal probation. The fact that Mueck believes he needed to attend substance abuse classes because of his alcoholism does not render his discussions with management a legally protected request for accommodation, just like the plaintiff's request for flex time to attend doctor's appointments in *Tabatchnik* did not constitute a legally protected request for accommodation, because La Grange was not aware that Mueck was disabled at the time. Therefore, Mueck's claim fails because he never engaged in legally protected activity.

      2.    <u>La Grange's reason for terminating Mueck's employment was not pretext for retaliation.</u>

As detailed thoroughly above, Mueck's employment terminated because he was court-ordered to attend substance abuse classes that prevented him from working scheduled shifts in the summer of 2019. This reason was not a pretext to retaliate against him for engaging in any protected activity any more than it was a pretext to discriminate against him because of his alleged alcoholism. There is no evidence whatsoever that Mueck's employment terminated because he requested any accommodation. To be sure, while it is true that Mueck's employment terminate because his court-ordered substance abuse classes conflicted with his work schedule, there is no evidence that he was terminated merely for informing management about this scheduling conflict and working to resolve the conflict as a form of accommodation.

Furthermore, the evidence shows that the Company willingly accommodating Mueck just months earlier without any adverse action. Mueck suffered a work-related injury in May 2018, which left him disabled and unable to work between July 2018 and February 2019. The Company

provided him with extended medical leave as an accommodation for this disability even beyond the expiration of his job-protected medical leave.  It is, therefore, baseless for Mueck to contend that La Grange terminated his employment for requesting a disability accommodation when the Company had accommodated a disability just months earlier without any negative repercussions. Therefore, without any evidence to prove pretext, La Grange is entitled to summary judgment on Mueck's retaliation claim.

## III.
## CONCLUSION

For all of these reasons, Defendant La Grange Acquisition, L.P. respectfully requests that the Court grant its Motion for Summary Judgment, that Mueck take nothing, and that La Grange be awarded such other and further relief to which it is justly entitled.

Dated October 12, 2021

Of Counsel:

Luke C. MacDowall
State Bar No. 24104445
Federal I.D. No. 2983511
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
lmacdowall@littler.com

Respectfully submitted,

/s/ Kelley Edwards
Kelley Edwards (Attorney-in-Charge)
State Bar No. 24041775
Federal I.D. No. 560755
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
kedwards@littler.com

**ATTORNEYS FOR DEFENDANT
LA GRANGE ACQUISITION, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2021, a true and correct copy of the foregoing was served upon the following recipients through the Clerk of Court using the CM/ECF system.

Michael V. Galo, Jr.
Galo Law Firm, P.C.
4230 Gardendale, Bldg 401
San Antonio, Texas 78229
mgalo@galolaw.com


/s/ Kelley Edwards
Kelley Edwards


4816-0782-9235.4 / 076244-1046

21