IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CLINT MUECK, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:20-cv-00801 |
| | § | |
| LAGRANGE ACQUISITIONS, L.P., | § | |
| Defendant. | § | |
| | § | |

---

**PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

## I.    INTRODUCTION

Clint Mueck is an alcoholic.  Thanks to the coping tools that he developed from Alcoholics

Anonymous, substance abuse counseling, and sponsors who have assisted him along his difficult

journey, Mueck has been sober for over two-and-a-half years (sobriety date of March 4, 2019).

Mueck Decl. paras. 25 & 26, Ex. 1. But Mueck was anything but sober when he worked for La

Grange.  Because of his raging alcohol addiction, which was fueled by his long-standing bouts of

depression caused by family problems and failed marriages, Mueck's life spiraled out of control.

*Id.* at para. 5. Although he managed to remain sober on his work days, Mueck was a full-time

drunk when not working, drinking until he passed out, *id.* at paras. 2 & 3, Ex. 1, failing to bathe or

brush his teeth for a week at a time, and prioritizing his consumption of alcohol over everything--

and everyone--else in his life. *Id.* at para. 5. Not surprisingly given this state of affairs, Mueck was

charged with several alcohol-related offenses while he was employed by La Grange. *Id.* at paras.

4 & 6. Matters came to a head for Mueck in May of 2019 when he agreed to a probation order that

required him to, among other terms, undergo a three-month-long course of substance abuse

1

counseling. *Id.* at para. 11. Because Mueck worked a 7-day-on/7 day-off schedule that alternated between day and night shifts, this substance abuse program would only require him to miss portions of four shifts over the course of the three-month program. *Id.* at paras 11, 12 & 13.

Mueck approached his supervisor to alert him of the situation and request for time off on the few occasions that his substance abuse counseling would conflict with his work schedule. *Id.* at para. 15. Mueck explained that he had come to the realization that he was an alcoholic, that his life had gotten out of control, and that he needed help because his drinking problem was adversely affecting all aspects of his life, including work. *Id.* at para. 8. Mueck further explained that he had already started the process of recovery by participating in Alcoholics Anonymous meetings four to five times per week, *id.* at para. 9, that he had been sober for over two months, and that he believed he needed the substance abuse counseling to facilitate his recovery. *Id.* at para. 12

Shortly thereafter, La Grange suspended Mueck pending "investigation", *id.* at para. 18 and then, a week later, discharged him from employment, stating that HR had "elected to terminate [his] employment due to the inability to fulfill [his] work schedule based on the conflict that these classes will have on [his] work schedule." *Id.* at para. 19; Audio Trans., Ex. 9. This was so even though Mueck would only have had to miss work on at most four occasions (and even then, for only three hours at a time), and the Company regularly arranged for relief coverage for other non-disabled/non-alcoholic employees who missed work due to sickness, vacation, and other reasons, and could have readily done so for Mueck. *Id.* at paras. 23-25.

Mueck offers competent evidence that by refusing to accommodate him under the circumstances and instead terminating his employment, La Grange violated the anti-discrimination, reasonable accommodation, and anti-retaliation provisions of the Americans with Disabilities Act as amended by the ADA Amendments Act of 2008.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists when the "'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir.2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party succeeds, the onus shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. The court must "draw all reasonable inferences in favor of the nonmoving party" and "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007).

## III.   ARGUMENTS AND AUTHORITIES

La Grange asks the Court to enter summary judgment on Mueck's claims, asserting that Mueck cannot establish a prima facie case under any ADA theory of liability, and that, in any event, there was a legitimate, non-discriminatory reason for Mueck's termination—namely, that the substance abuse counseling classes would conflict with Mueck's work schedule. Defendant ignores critical record evidence and misstates the controlling case law.

As demonstrated below, Mueck offers evidence that his alcoholism constitutes a disability within the meaning of the ADA Amendments Act, that he disclosed to management his alcoholism

3

and the debilitating effects it was having on his life; that he sought reasonable accommodation in the form of very limited time off to participate in substance abuse treatment, that reasonable accommodation was possible, and that La Grange denied Mueck reasonable accommodation and instead discharged him from employment even though the Company's policy and practice had been to arrange coverage for employees who were sick, on vacation, or otherwise unable to attend work for at least short periods of time.

### A. Mueck Asserts Claims for Discriminatory Discharge, Failure to Provide Reasonable Accommodation, and Retaliation

Section 12112(a) of the ADA provides that no covered entity shall "discriminate" against a qualified individual with a disability because of the disability of such an individual in regard to, inter alia, "the hiring, advancement, or discharge of employees ... and other terms, conditions, and privileges of employment." In addition, Section 12112(b)(5) states that the term, "discriminate," includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity." Mueck asserts claims under both theories, as La Grange refused to provide him with the requested unpaid time off from work to participate in substance abuse counseling and instead discharged him from employment, claiming that the sessions conflicted with his work schedule. Separately, Mueck advances a claim for retaliatory discharge under Section 12203, claiming that his request for reasonable accommodation was protected activities under the ADA, and that he was discharged for making these requests.

### B. Mueck Offers Evidence that He is Disabled within Meaning of ADA as Amended

La Grange first contends that Mueck's claim for disability discrimination fails because Mueck is not disabled. La Grange relies exclusively on several cases that predate the ADA

Amendments Act of 2008 to support what seems to be a passing argument that Mueck was not disabled because he was able to work despite his alcoholism.

Of course, the enactment of the ADAAA was a sea change in the area of disability discrimination law. It was the Congressional response to the federal courts' narrow interpretation of the term disability under the ADA. *See* 42 U.S.C Section 12101(a) & (b). "The ADAAA rejected what Congress perceived to be the Supreme Court's unduly restrictive approach to analyzing whether [an individual] suffered from a 'disability' for purposes of the ADA." *Cook v. Equilon Enters., L.L.C.*, 2010 WL 4367004, *6 (S.D. Tex. Oct. 26, 2010) (Ellison, J.); *see also Norton v. Assisted Living Concepts, Inc.*, 786 F.Supp.2d 1173, 1184–85, 2011 WL 1832952, *7 (E.D. Tex. May 13, 2011) (noting that the ADAAA expanded the ADA's definition of the term 'disability'). Under the ADAAA, the Court is required to construe the term 'disability' broadly and to provide coverage to the maximum extent possible under the ADA. *See Cook*, 2010 WL 4367004 at *6; *see also Norton*, 786 F.Supp.2d at 1185–86, 2011 WL 1832952 at *7–*8 (citing 42 U.S.C. § 12102(4)(A) & (B)). "Congress' stated purpose in expanding the definition of disability was to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* at 1184, at *7.

In addition to lowering the threshold for what it means to be "substantially limited" in a major life activity, the ADAAA provided a new, non-exhaustive list of major life activities, including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Significantly, "major life activities" are also defined to include "the operation of a major bodily function, including but not limited to,

functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

Also, "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as medications, . . . reasonable accommodations . . . or learned behavioral or adaptive neurological modifications." 42 U.S.C. § 12102(4)(E).

Against this legal framework, it is plain to see that Mueck's alcoholism constitutes a disability. Drinking was Mueck's primary purpose in life. Mueck Decl. paras. 2 & 3, Ex. 1. For days at a time, and on a regular and consistent basis for years, Mueck's craving for alcohol caused him to drink to such an extent that he would pass out or get so sick that he could drink no more, only to wake up again and start the process of drinking all over again. *Id.* at paras. 3, 4 & 5. In his declaration, Mueck details what his life was like when he was drinking, including—as evidenced by the four alcohol-related offenses he was charged with between 2017 and 2019--the terrible effects drinking had on the major life activities of thinking clearly, reasoning (including exercising appropriate judgment and restraint), and concentrating. *Id.* at paras. 3, 4, 5 & 6. So strong was Mueck's addiction that when he finally resolved to stop drinking, he was prescribed Naltrexone by his physician to curb his cravings. Meuck Decl., para. 10, Ex. 1 Moreover, given that Mueck's alcoholism is an addiction, Mueck was substantially limited in his brain function. Woodlee Decl., para. 3, Ex. 2.

### C.  La Grange Misstates the 4th Element of Prima Facie Case

La Grange next contends that Mueck cannot establish a prima facie case of disability discrimination under Section 12112(a) because there is no evidence he was replaced by someone

outside the protected class or was otherwise treated less favorably than non-disabled employees. La Grange misstates the controlling legal standard and also ignores the record evidence.

To begin, Mueck need not show that he was replaced by someone outside the protected class or was otherwise treated less favorably than non-disabled employees. The Fifth Circuit made this clear in *EEOC v. LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014). The Fifth Circuit recognized that, at least in the context of a termination claim, a discrepancy had developed over the elements of a prima facie case. One line of cases, as articulated in *Zenor v. El Paso Healthcare Sys.*, 176 F. 3d 847, 853 (5th Cir. 1990), required that the plaintiff only establish that (1) he has a disability; (2) that he is qualified for the job held; and (3) that he was subject to an adverse employment decision on account of his disability. A second, later line of cases required the plaintiff to show that he suffered an adverse employment action and that he was replaced by a non-disabled person or was treated less favorably than non-disabled employees. La Grange relies on these cases.

However, the *LHC* Court determined that the earlier line of cases, as exemplified by *Zenor*, is controlling, not only based on the rule of orderliness but also because it was more persuasive and comported with the decisions of other circuit courts. 773 F.3d at 695-97. Therefore, there is simply no requirement for Mueck to establish that he was replaced by someone outside the protected class or that he was otherwise treated less favorably than non-disabled employees. *Id.*; *Weed v. Sidewinder Drilling, Inc.*, 245 F. Supp.2d 826, 835-36 (S.D. Tex. 2017) (discussing *LHC*).

Second, lest there be any question, the record evidence indicates that Mueck was replaced by Jonathan Trevino who, as far as La Grange management knows, has no disability. Pawelek Dep. 21:19-25, Ex. 3 (Q: So to your knowledge [Trevino] doesn't? A: No, sir. Q: Correct? A: Yes sir.); Bonewald Dep. 40:18-19, Ex. 4 ("I don't know of anyone who works under me who has a disability, sir.").

Third, there is substantial evidence from which a jury could conclude that La Grange treated Mueck less favorably than his peers vis a vis Mueck's request to be excused from work on just a few occasions to participate in the substance abuse program. Both Mueck and his former supervisor, Geron Hendrickson-Javois, have provided declaration testimony that La Grange accommodated other Fashing Plant operators who needed time off for a host of reasons, even when the request for time off was on short notice. La Grange accomplished this in various ways such as allowing shift swaps between operators, using the relief or lead operator (whose job functions included substituting in for absent operators), filling in with the supervisor, or even bringing in a pipeline operator who had previously worked as an operator in the Fashing Plant. Mueck Decl. para. 23, Ex. 1; Hendrickson-Javois Decl., paras. 3-5, Ex. 5. Even Supervisor Kevin Pawelek admitted that there were times when he would fill in for an absent operator, as would lead operator John Hanselman. Pawelek Dep. 27:5-14, Ex. 3. Director of Operations Ricky Bonewald likewise confirmed that the lead operator would substitute in when needed to cover for operators on vacation or in emergency situations. Bonewald Dep. 34:1-15, Ex. 4. Pawelek admitted that it was "potentially" possible that he or Hanselman could fill in for Mueck for the few hours needed for him to attend substance abuse treatment and return to the plant. However, Pawelek did not explore this possibility, *id.* at 29:11-19, supposedly because Mueck had proposed a shift swap, *id* at 27:19-20. The rub here is that at no time prior to his termination had Mueck been informed that a shift swap was not possible or that the Company was considering the termination of his employment. Mueck Decl. paras. 22 & 24, Ex. 1. Had La Grange done so and engaged in the ADA-required interactive process, Mueck would have proposed other options, including missing only partial shifts. *Id.*

Although the Company claims it was unable to accommodate Mueck, the Drug and Alcohol section of the Employee Handbook encourages employees

> to seek assistance before their substance abuse or alcohol misuse renders them unable to perform the essential functions of their jobs, or jeopardizes the health and safety of themselves or any Company employee. As explained in Section 2-5, the Company is committed to providing reasonable accommodation consistent with the requirements of the Americans with Disabilities Act, as amended by the ADA Amendments Act (ADAAA), and any similar, applicable state and local laws.

Employee Handbook pg. 70, Ex. 6.

What is more, the Company maintained a "Personal Leave" policy that allowed for a leave of absence—usually of up to 30 days—for employees who needed to take time off for personal reasons but who are ineligible for any other Company leave of absence. Employee Handbook, pg. 47, Ex. 6. Yet this was never offered to Mueck even though this was essentially what he was requesting. Mueck Decl. para. 22, Ex. 1. Based on the Drug and Alcohol and Personal Leave policies, it appears that La Grange held Mueck to a higher, or more difficult standard than is contemplated by the Company's written policies.

La Grange also failed to provide Mueck with the benefit of the protections afforded by the Company's established progressive discipline policy, which typically involves a verbal warning, written warning, and then a suspension prior to discharge. Employee Handbook pgs 53 & 54, Ex. 6. In this case, La Grange summarily discharged Mueck before he had incurred a single absence as a result of the substance abuse program.

So, regardless of which final element of the prima facie case that one chooses to apply, there is abundant evidence from which a jury could reasonably conclude that Mueck carried his burden. Not only was Mueck replaced by someone who is by all appearances not disabled, but he also was treated less favorably in comparison to other operators who had to miss work. And at the

9

same time, Mueck was denied the protections afforded by the provisions of the Employee Handbook.

**D.     La Grange's Stated Reason for Termination Smacks of Pretext**

La Grange next argues that it fired Mueck because his substance abuse program conflicted with his work schedule for three months.  The Company claims that this constitutes a legitimate, non-discriminatory/non-retaliatory reason for discharge, and that Mueck cannot establish pretext. As such, the argument goes, the Court must dismiss both the discrimination and retaliation claims.

Mueck may establish pretext using "any evidence that casts doubt on the credence" of the stated reason for termination.  *Watkins v. Tregre*, No. 20-30176, pg. 11 (5th Cir., May 7, 2021) (slip op) (citing *Brown v. Wal-Mart Stores E, L.P.*, 969 F.3d 571, 578 (5th Cir. 2020)).  A reason is "unworthy of credence if it is not the real reason for the adverse employment action." *Watkins*, pg. 11; *Laxton v. Gap*, 333 F.3d 572, 578 (5th Cir. 2003)).

Defendant's stated reason for firing Mueck cannot withstand even the most cursory scrutiny because the evidence shows this scheduling conflict, which only existed with respect to portions of four shifts spread across three months, could have been alleviated had La Grange worked with Mueck.  As alluded to above, whether analyzed as simple disparate treatment or as a failure to provide Mueck reasonable accommodation for his disability, the evidence that La Grange regularly provided coverage to other Fashing plant operators who had to miss work full or partial days for a variety of reasons is damning.  Mueck Decl., paras. 23 & 24, Ex. 1; Hendrickson-Javois Decl., para. 5, Ex. 5.  Why was the Company willing to accommodate non-disabled/non-alcoholic employees but unwilling to extend Mueck the same concessions?  This is especially problematic for La Grange given its Personal Leave Policy, which provides for up to 30 days of personal leave when an employee has no other leave available.  Employee Handbook pg. 47, Ex. 6.  La Grange

offers no explanation why, after Mueck requested time off to attend the substance abuse counseling, it did not consider offering him personal leave or at least direct him to the personal leave policy—especially given that, by La Grange's own admission—HR Manager Raymond De La Vega was consulting management behind the scenes. His job duties included ensuring that the Company followed its' policies and applicable laws, and making sure that employees are treated fairly. De La Vega Dep. 44:18 to 45:3, Ex. 10.

Tellingly, Ricky Bonewald, the director who recommended Mueck's termination, testified that had Mueck advised that he wanted to take the time off for substance abuse counseling as "vacation," the Company would have arranged coverage and would not have terminated him from employment. Bonewald Dep. 48:17 to 49:1, Ex. 4. However, according to Bonewald, Mueck did not wish to use his vacation time, *id.* at 31:16, a claim that Mueck denies, Mueck Decl, para. 20, Ex. 1. No one ever broached the issue of taking the time off as vacation or advised Mueck that he needed to request the time off as vacation. *Id.* Pawelek testified that the problem was that Mueck did not have sufficient vacation to cover the shifts he would need to miss. Pawelek Dep. 29:9-10. In truth, Mueck had accrued 15 hours of vacation at the time, Mueck Decl., para. 21, Ex. 1, which was more than enough time to cover the four night shifts (6pm to 6am) when he had to attend substance abuse group sessions from 6pm to 8pm. Allowing for one hour of travel from the substance abuse center in Floresville to the Flashing Plant in Karnes City, Mueck could have reported to work by 9pm on each of these nights. *Id.* at para. 24. Thus, he would have needed only a total of 12 hours of vacation (4 nights multiplied by three hours per night). Pawelek testified that this was at least "potentially" a solution for him (Pawelek) or lead operator Josh Hanselman to fill in for Mueck for three hours at a time. However, this was allegedly never explored. Pawelek

Dep. 29:11-19, Ex. 3.  Nor did Pawelek ask any of the other operators whether they were willing to cover partial shifts for Mueck so that he could attend the substance abuse sessions.  *Id.* at 19:4.

And, viewed through the prism of failure to provide reasonable accommodation, La Grange's willingness to provide coverage for other operators but not for Mueck on the few occasions he needed to attend the substance abuse program indicates that Mueck could have been accommodated had La Grange desired.  Indeed, Mueck and Hendrickson-Javois both testified that the supervisor and lead operator were used to providing relief when necessary.  Mueck Decl. para. 23, Ex. 1; Hendrickson-Javois Decl., paras. 5 & 6, Ex. 2.  Pipeline operator Jeremiah Martinez was also used from time to time for this purpose.  Mueck Decl. para. 23, Ex. 1.

Again, Pawelek admits that he and the lead operator cover shifts for absent operators and might have been able to cover for Mueck, but he did not explore this option because Mueck had requested a shift swap.  Pawelek Dep. 27:7 to 29:19, Ex. 3.  The problem of course with this explanation is that no one bothered to inform Mueck that a shift swap was not available or that the Company was considering discharging him from employment because of the scheduling conflict.  Mueck Decl. paras. 21 & 22, Ex. 1.  (When asked why he did not advise Mueck prior to his termination that the Company was unable to cover his shifts so that Mueck could try to make other arrangements, Bonewald responded:  "I don't know."  Bonewald Dep. 41:18, Ex. 4.)  Had management done so, Mueck would definitely have proposed this accommodation as part of the interactive process.  But because La Grange broke off the required reasonable accommodation interactive process, this never happened.  Mueck Decl., paras. 22 & 24, Ex. 1.

Lastly, the Company's Drug and Alcohol Policy specifically encourages employees who have a substance abuse problem to "seek assistance" before the "alcohol misuse renders them unable to perform the essential functions of the job" and assures employees that the Company is

"committed to providing reasonable accommodation." Mueck did precisely this when he notified Pawelek that he was an alcoholic and was required to enroll in a substance abuse program, which, in addition to being court-ordered, he believed was necessary because his drinking problem was affecting all aspects of his life, including work. Mueck Decl. para. 12, Ex. 1.

Bonewald testified that had Mueck been absent as a result of taking a leave of absence through the Employee Assistance Program, his shifts would have been covered. Bonewald Dep. 38:17 to 39:9, Ex. 4. This begs the question: If La Grange would have granted Mueck a leave of absence had he sought substance abuse counseling through the EAP, why would it not grant such a request outside the context of the EAP? After all, neither the Drug and Alcohol Policy nor the Accommodation Policy mandates use of the EAP. Ex. 6, pgs. 16-17 & 70.[1]

Lest there be any doubt, the Company cannot in good faith claim that it was not aware that Mueck's request for time off was related to participation in a substance abuse counseling program, that Mueck had multiple alcohol-related criminal charges over the last two years, and that Mueck believed he had an alcohol-dependency problem. After Mueck disclosed this situation to Pawelek, Mueck Decl. paras. 8 & 12, Ex. 1, Pawelek sent an email to his boss, Jerry Fraustro, about Mueck's DUI, including that Mueck would have to start going to "a substance abuse class 2 times a week from 6pm to 8pm," that Mueck stated he was "60 days sober," and that Mueck "was going to an AA meeting 4 to 5 times a week." Pawelek Email, Ex. 7. Fraustro forwarded this email to Bonewald as well as to HR Manager Raymond De La Vega. *Id.*

At the end of the day, La Grange turned its back on Mueck, and then, without advance notice, terminated Mueck for a schedule conflict that it could have readily accommodated. Perhaps it is for this reason that Pawelek's endorsement of the termination was lukewarm at best. He

---

[1] As noted, Mueck called the EAP number as suggested by Pawelek, but he received no call back. Mueck Decl. paras. 12 & 22, Ex. 1.

testified that he agreed with the termination decision but only because it was made by HR and upper management. Had it been his decision to make, he "doesn't know" whether he would have fired Mueck. Pawelek Dep. 19:5-23, Ex. 3.

### E. La Grange Failed to Reasonably Accommodate Mueck's Need for Time Off to Participate in Substance Abuse Program

La Grange also seeks dismissal of Mueck's claim for failure to provide reasonable accommodation. It argues that Mueck did not put the Company on notice that he needed a disability accommodation, and regardless, Mueck's request for time off to participate in a court-ordered substance abuse program cannot, as a matter of law, constitute a request for reasonable accommodation. Finally, La Grange says that even if it had an obligation to provide reasonable accommodation, it discharged this duty by trying, albeit unsuccessfully, to get another operator to swap shifts with Mueck.

First, with respect to mental disabilities that are not open or obvious, the employee bears the initial burden of approaching the employer and identifying the disability and resulting limitations, and suggesting reasonable accommodations. In conveying this information, the employee is not required to mention the ADA or use the phrase "reasonable accommodation." Plain English is sufficient. *E.g., EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). Once an employee makes such a request, however, the employer is obligated by law to engage in an "interactive process," which the courts describe as a meaningful dialogue with the employee to find the best means of accommodating that disability. The process thus requires communication and good-faith exploration. When an employer does not engage in a good faith interactive process, it violates the ADA, including when it discharges the employee instead of considering the requested accommodations. *Id.* (citations and quotations omitted).

Mueck effectively and appropriately initiated the interactive process in May of 2019 through several discussions that he had with his supervisor, Kevin Pawelek. On or about May 5 or May 6, 2019, Mueck met with Pawelek and advised him that he had recently been arrested on a DUI, and that he had a previous DUI as well as public intoxication charges. Mueck also told Pawelek that he had a drinking problem and that he was going to seek help to turn his life around. Mueck Decl. para. 6, Ex. 1. Although the information conveyed by Mueck in this meeting alone did not constitute a request for accommodation, it was relevant background information for what followed.

Then, on May 17, Mueck again met with Pawelek and provided him with a copy of the court order extending his probation and imposing certain conditions. Court Order, Ex. 8. Mueck specifically discussed his participation in an upcoming outpatient intensive substance abuse program and the time off from work that he needed to participate in this program. Mueck admitted to Pawelek that he was an alcoholic and that he personally felt he needed to participate in the program because his life had fallen apart and his drinking problem was affecting every aspect of his life, including work. Mueck also advised Pawelek that he was committed to stop drinking, that he was going to Alcoholics Anonymous meetings four to five times per week, and that he had been sober for 60 days. Mueck Decl., para. 12, Ex. 1.

Pawelek clearly understood that Mueck was reaching out for help with his alcoholism and was seeking as an adjustment in his schedule so that he could participate in the substance abuse program. Indeed, during this conversation, Pawelek advised Mueck to call the Employee Assistance Program. *Id.* Additionally, after their meeting, Pawelek sent the email to his boss, Jerry Fraustro, reporting on the conversation, including that Mueck would be participating in substance abuse classes twice per week (6 pm to 8 pm) and would need time off. Pawelek Email,

Ex. 7. As noted above, this email was forwarded to Bonewald and to HR Manager De La Vega. *Id.*

By sharing this information with Pawelek, Mueck met his initial obligation to start the interactive process. If La Grange felt it needed additional information to determine whether Mueck met the definition of a disability or to assess whether, and if so how, it could reasonably accommodate Mueck, it was its responsibility to get back to Mueck to seek additional information. La Grange did not do so.

La Grange's second argument—that his request for time off to participate in the substance abuse program cannot, as a matter of law, constitute a request for reasonable accommodation because the substance abuse was court-ordered (as opposed to completely voluntary)—is not supported by the law. Indeed, the cases cited by La Grange do not even begin to support the Company's bold position. It is well established that granting an employee leave from work to obtain treatment—whether it be medical, psychological, rehabilitative, or simply recuperative—can be a form of reasonable accommodation as long as it is not an indefinite leave. *E.g., EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA (October 17, 2002)* (stating the use of accrued paid leave, or unpaid leave is a form of reasonable accommodation when necessitated by an employee's disability and that leave may needed for a number of reasons, including substance abuse treatment); *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185-86 (2d Cir. 2006); *Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 967 (10th Cir.2002); *Humphrey v. Memorial Hospitals Assn*, 239 F.3d 1128, 1139 (9th Cir. 2001); *Criado v. IBM Corp.*, 145 F.3d 437, 443-44 (1st Cir. 1998); *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp.2d 694, 701 (E.D. Pa. 2010); *Villalon v. Del Mar College Dist.*, 2010 WL 3221789, *7 (S.D. Tex., Aug. 13, 2010). There is absolutely nothing in the statute, the EEOC

regulations, or the case law indicating or even suggesting that the court-mandated nature of a treatment program removes the request from the ambit of reasonable accommodation.

The truth is that, although the substance abuse program was indeed court-ordered, Mueck recognized that he desperately needed it at a personal level to conquer his addiction, which was interfering with all aspects of his life. And Mueck told Pawelek precisely this when he requested time off to participate in the substance abuse counseling. Mueck Decl., paras. 8 & 12, Ex. 1. Mueck's substance abuse counselor, David Woodlee, who administered the program, diagnosed Mueck as having alcohol dependency, and as an alcoholic. Woodlee Decl., para. 3, Ex. 2. He too believes that it was critical that Mueck participate in the substance abuse program. *Id.* at para. 5. The point is that regardless of whether the substance abuse program was court-ordered or not, Mueck needed it to treat his disability.

It also bears mentioning that the clients that participate in the program include both private patients as well as patients who are ordered to participate by the court system. The program is the same. *Id.* at para. 4. So, in reality, there is no distinction between the court-ordered substance abuse treatment that Mueck underwent and the substance abuse treatment obtained by Mr. Woodlee's private pay patients.

There is no principled rationale for excluding court-ordered treatment from the ambit of ADA reasonable accommodation. An illustration outside the context of alcoholism is helpful to illuminate this point. Assume, for instance, that an employee suffers from a diagnosed psychiatric condition that results in a court ordering the employee to be committed to the State hospital for a brief period of time while the employee's condition is controlled through medication. The employer would be hard-pressed to argue that the employee is not entitled to the time off as a reasonable accommodation under the ADA. So, why is Mueck's case any different? The courts

17

recognize that repeat alcohol offenders like Mueck often have underlying alcohol dependency issues and order that these individuals undergo treatment for their own good. Provided of course that these individuals meet the definition of being disabled, and that they appropriately request the time off from their employers, their requests for time off are as deserving of protection as those of any other disabled individuals who need time off for treatment. Given that so many individuals enter treatment through the court system, any rule to the contrary would be tragic, as it could result in these individuals losing their jobs because they need treatment.

Lastly, La Grange contends that it did in fact reasonably accommodate Mueck by inquiring whether any of the other operators at the plant would work the shifts for Mueck. La Grange offers the testimony of Pawelek to the effect that Les Lasiter, the employee who had agreed to cover for Mueck, stated that he was unwilling to cover the four night shifts when Mueck was to be in group sessions. This is inadmissible hearsay testimony to which Mueck objects.

But even assuming that none of Mueck's colleagues were willing to swap shifts with him, there were, as detailed above, other ways to accommodate Mueck. As discussed, these shifts could have been filled by the lead operator, supervisor Pawelek, or even pipeline operator Jeremiah Martinez, as each of these individuals had filled in for operators when they were absent for any number of reasons. Mueck Decl., para. 23, Ex. 1; Hendrickson-Javois Decl., paras. 3-5, Ex. 5. Even Pawelek admitted that this had been done in the past. Pawelek Dep. 27:6, Ex. 3.

Additionally, as also detailed above, Mueck could have actually made do with relief for just three hours (from 6pm to 9pm). Mueck Decl. paras. 22 & 24, Ex. 1. There is no indication in the record that Pawelek or anyone else in management broached this issue the operators. For his part, Pawelek admits that he or the lead operator might have been able to cover these partial shifts, but he did not explore it with Mueck because he believed that Mueck was looking for a shift swap.

Pawelek Dep. 27:6 to 29:19, Ex. 3.  This was very unfortunate because, after Mueck proposed shift swaps and believed that the matter had been resolved, no one in management came back to him and told him that this was purportedly not feasible.  Had they done, Mueck would have proposed other solutions, including being absent for only the first three hours of the affected shifts.  Mueck Decl., paras. 22 & 24. Ex. 1.  Instead, what actually happened is that Mueck was abruptly suspended "pending" some supposed investigation, and then he received the call from Fraustro and De La Vega advising that he was terminated because his substance abuse classes conflicted with his work schedule.  (A transcript of the recording of this brief termination call is attached as Exhibit 9).  In the call, Mueck tried to explain that he had secured his own shift swap, but he was cut off by Fraustro.  *Id.*  In his deposition, De La Vega was asked why, as the human resources manager, he did not follow up on this issue.  De La Vega's response was telling:  "I just don't know."  De La Vega Dep. 46:3-23, Ex. 10.  Of course this brings us back to the question of why did management not, as part of the required interactive process, get back with Mueck before his termination.   The ball was in their court.   Ricky Bonewald, the manager who actually recommended Mueck's termination to the vice president, also could not answer this important question.  Bonewald Dep. 41:18, Ex. 4.

Then there is the issue of La Grange's established Personal Leave Policy, which provides for up to 30 days of leave, and which seemed to be tailored made for this situation.  Ex. 6, pg. 47. Why did La Grange not approve Mueck's requested time off under this policy, or at least direct Mueck towards it? And why, per Ricky Bonewald, would La Grange have granted Mueck's request for time off for substance abuse counseling and found a replacement had the request been made as a vacation request but not otherwise?  Indeed, as it turns out, Mueck did have 15 hours of accrued vacation, which would have covered the time he needed to participate in the group sessions

and then return to the plant to start working by 9 pm. Mueck Decl., para. 21, Ex. 1. Apparently this was never explored. All of these issues point directly to a breakdown in the interactive process for which La Grange is solely responsible. Instead of following through in the interactive process as it was required to do, La Grange simply opted to terminate Mueck's employment. This is a violation of the ADA reasonable accommodation provision. *See Chevron*, 570 F.3d at 621.

### F. Mueck Offers Sufficient Evidence to Support his Retaliation Claim

Defendant next argues that Mueck cannot possibly make out a prima facie case of retaliation because (1) he did not engage in "protected activity," and (2) there is no causal connection between the request for leave and the termination. Defendant's arguments lack merit.

Defendant's first argument may be quickly dispatched, as the federal courts have uniformly held that a request for reasonable accommodation constitutes protected activity under the ADA's anti-retaliation provisions. *See, e.g., Tabatchnik v. Continental Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008) (*citing Jones v. UPS*, 502 F.3d 1176, 1194 (10th Cir. 2007); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 620 n. 4 (5th Cir. 2009) ("Every appeals court to consider whether requesting accommodation is protected activity has concluded that it is protected as long as the employee had the reasonable belief that he was covered by the ADA."). For the reasons explained above, Mueck did adequately request reasonable accommodation and start the interactive process. As such, he engaged in legally-protected activity.

Defendant's second argument fairs no better. There is ample evidence from which the Court may infer a causal connection between Mueck's request for the time off to participate in the substance abuse program and his termination. First, there is the close timing between Mueck's requests and his termination (May 17 request to termination on June 4). *E.g., Lyons v. Katy I.S.D.*, 964 F.3d 298 (5th Cir. 2020). Second, as detailed above, there is ample evidence from which the

jury may conclude that La Grange's stated reason for Mueck's termination is pretextual and that the Company could have, and should have, accommodated him.   Because "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination, even without further evidence of the defendant's true motive," *Laxton v. Gap*, 333 F.2d 572, 578 (5th Cir. 2003), summary judgment on Mueck's retaliation claim must also be denied.

## CONCLUSION AND PRAYER

Clint Mueck prays that the Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,


/s/Michael V. Galo, Jr.
Michael V. Galo, Jr.
State Bar No. 00790734
Galo Law Firm, P.C.
4230 Gardendale, Bldg. 401
San Antonio, Texas  78229
mgalo@galolaw.com
Telephone -- 210.616.9800
Facsimile -- 210.616.9898
ATTORNEYS FOR PLAINTIFF
CLINT MUECK

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served on counsel for Defendant, on this 26th day of October, 2021 via the Court's electronic filing system as follows:

Ms. Kelley Edwards
Mr. Luke C. MacDowall
Littler Mendelson, P.C.
1301 McKinney St., Suite 1900
Houston, Texas 77010
**via Email: kedwards@litler.com**
**and lmacdowall@littler.com**

/s/Michael V. Galo, Jr.
Michael V. Galo, Jr.